CATHARINE WAIT, Respondent, v. THE AGRICULTURAL INSURANCE COMPANY, Appellant.

*Policy of insurance — "unoccupied" — meaning of.*

A policy of insurance issued upon a dwelling-house provided that if it should cease to be occupied by the owner or occupant in the usual and ordinary manner in which dwelling-houses are occupied as such, the policy should become void. The house was occupied by a tenant, who, on March fifteenth, commenced to move out, and removed most of his furniture and all of his family from the house. No person was left in it, and on the night of the sixteenth it was destroyed by fire.

*Held,* that the question whether or not the house was unoccupied at the time of the fire, within the meaning of that term as used in the policy, was properly left to the jury.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

*Starbuck & Sawyer,* for the appellant.

*Hackett & Williams,* for the respondent.

DYKMAN, J.:

This action is upon a policy of insurance by which the defendant agreed to insure a dwelling-house of the plaintiff, which was occupied by a tenant. The defense is that notice and proof of the loss were not properly given as required by the policy, and that the house was unoccupied at the time of its destruction. The notice of the loss did not conform to the requirements of the policy, but the omissions have all been waived. On the 27th day of April, 1876, the secretary of the defendant wrote to the plaintiff that the company had learned about four weeks before that the house had burned, and requested her to make proof of loss on a blank enclosed and to verify the same, and return it to the company at her convenience. This was a sufficient waiver of all objections down to that time.

On the 30th day of May, 1876, the assistant secretary again wrote to the plaintiff acknowledging the receipt of her letters and papers, stating that they were very incomplete, but that the principal diffi-

culty was that she swore the house was occupied at the time of the fire, whereas the company had good information that no one lived in the house at the time it burned. He declined to pay the loss, but did not call for further proofs, as he was bound to do then, if those furnished were incomplete or insufficient. Not having done so, he must be deemed to have accepted those furnished as sufficient. But this is not all. On the 6th day of June, 1876, the assistant secretary wrote to the attorney for the plaintiff a letter acknowledging the receipt of one from him on the fifth, and using these words in a sentence by itself, " We do not care for more proof."

It is fair to presume that these words were used in reply to an offer by the lawyer in his letter to furnish more proofs if desired. These facts show an acceptance of the proofs furnished as sufficient, and a waiver of all objection and omission.

But it is urged that the house was unoccupied at the time of the fire, and for that reason the policy had become null and void. The condition in the policy is that if the dwelling-house thereby insured shall cease to be occupied by the owner or occupant in the usual and ordinary manner in which dwelling-houses are occupied as such, then the policy shall be null and void until the written consent of the company shall be obtained. This dwelling was occupied by a tenant, who, on the fifteenth day of March, commenced to move out and removed most of his furniture and all of his family from the house, intending doubtless to return and take the remainder of his furniture, and then surrender the possession to the owner. No person was left in the house, and on the night of the sixteenth it was destroyed by fire. There was some proof that the plaintiff did not know and had no notice of the removal of her tenant, and although the testimony was objected to, yet it was proper to show that the plaintiff was guilty of no negligence in not notifying the defendant of the vacancy of the premises. The charge of the court is not contained in the case, but we are bound to presume, as there were no exceptions to it, that the jury was properly instructed on all the questions in the case. It appears, however, from the appellant's points that the question whether there had been a breach of the condition of the policy requiring occupation or no was submitted to the jury, and that is now assigned for error. We need not stop to consider whether it was error or not, for there was no exception to

the charge, and no objection can now be heard against it. Neither was there any error in denying the motion for a nonsuit, for the point we are now considering was not properly presented, and the objection respecting the sufficiency of the notice is not valid, as we have already seen.

The question is presented, however, by the appeal from the judgment and the order denying the motion for a new trial on the minutes of the court. If this house was occupied at the time of its destruction in the usual and ordinary manner in which dwelling-houses are occupied as such, then the policy was not void, but was in full force at that time. As commonly used and understood the word " occupation " is synonymous with " possession ;" according to Webster, occupancy is the act of taking or holding possession, and occupy means to take possession, to keep in possession, to possess, to hold or keep for use, and as used in this policy the word ought to be given its most extensive signification and no forfeiture should be permitted, except there has been a plain violation of the condition when so interpreted.

Dwelling-houses are ordinarily used for places of abode, and the persons who occupy them are sometimes out of them and sometimes in them. Often it happens that they are left for a day and more by the occupants who are absent from them either for business or pleasure, and yet in such case no one would say the house was unoccupied within the fair meaning of that word. In the eye of the law it would be in the possession of the person or family residing there. So it also often comes to pass that the occupants of dwelling-houses are changed, and the incoming tenant cannot commence his occupancy until the outgoing one has removed, and do all they both can, there will be a point of time when there is no person in the house, but is the house therefore vacant? The law is not unreasonable and will not pronounce a house unoccupied because no human being draws the breath of life within its walls. Whole families go out to divine service on the Sabbath day and in the evening, and leave their residence without a human being, but yet they are not unoccupied. Where shall the line be drawn? Can an outgoing tenant take time for the removal of his household goods after his family has left the house, provided the time taken be reasonable? It seems but fair and just that such should be the

rule, and if so, how can it be determined what is a reasonable time, and whether the house has become unoccupied, better than by leaving the question to a jury under proper instructions.

The case of *Paine* v. *The Agricultural Insurance Company* (5 N. Y. S. C. [5 T. & C.], 619), was properly disposed of by the General Term, but the condition in the policy and the facts there were so unlike those in this case that it cannot have much influence as authority. In that case the court, after observing that it is not necessary that some person should live in the house every moment, but that there must not be a cessation of occupancy for any considerable portion of time, uses the following language : " For what length of time it may remain unoccupied will depend upon the circumstances of each case, and the jury or the referee must determine the question in view of the consideration that led to the incorporation of the proviso into the policy, and the necessity that not unfrequently arises for persons insured to leave temporarily their dwelling-houses."

*Whitney* v. *Black River Insurance Company* (9 Hun, 37) was an insurance of a saw-mill, and does not shed much light on this case, but the referee there found that the premises did not become vacant and unoccupied, and gave judgment for the plaintiff, which was affirmed by the General Term. The question seems, therefore, to have been there regarded as one of fact to be determined in view of all the circumstances.

In this case, the cessation of actual inhabitancy, was for a very short time, and the premises had not been abandoned by the tenant nor surrendered by him to the plaintiff.

The facts and circumstances are such that different minds will come to different conclusions on the question of occupancy, and that makes it a very proper case for a jury. It does not follow that because there is no contradictory testimony the court must take the question from the jury and determine it as one of law ; on the contrary, if different results would be reached by different minds, the question must go to the jury.

The appeal book presents no error and the judgment must be affirmed, with costs.

GILBERT, J., dissenting, BARNARD, P. J., not sitting.

Judgment and order denying new trial affirmed, with costs.